**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL CASE NUMBER:** |
|  | **1:17-CR-430-TWT-JSA** |
| **THOMAS UKOSHOVBERA A. GBENEDIO** | |

===============================================================

**REPORT AND RECOMMENDATION
ON A MOTION TO SUPPRESS EVIDENCE**

Defendant, a pharmacist, is charged with illegally distributing and dispensing substantial quantities of prescription drugs from Better Way Pharmacy, which he owned and operated. *See generally* Indictment [1] ¶¶ 12-20. The Defendant has now moved to suppress evidence that the investigators obtained by use of a surveillance camera, or "pole camera," which was installed outside of, and recorded video images of the exterior of, Better Way Pharmacy. *See* Motion to Suppress [50]. Defendant argues that this activity constituted a warrantless search.

The Court has considered the parties' legal briefs and finds that the Motion to Suppress [50] should be **DENIED** without a hearing. Defendant does not allege that the surveillance camera was installed on his property. There are no allegations that the camera captured anything more than the publicly-accessible exterior of Defendant's business or, at most, some of what may have been ordinarily visible

through the front windows. On these facts there is no basis to find a Fourth Amendment violation under any reasonable trespass or expectation of privacy theory. Further, Defendant does not establish the necessity of a hearing as he fails to allege facts that, if proven at a hearing, would show a violation.

## I.     FACTUAL BACKGROUND

Defendant's two-page Motion [50] alleges almost nothing in the way of factual support. The Motion states merely that "[t]he government obtained extensive data from Mr. Gbenedio's business using hours and hours of pole camera footage. Said footage was pervasive and captured innocent behavior." *Id*. at 2. Defendant does not allege that the camera was installed on his property.

According to the Declaration of Special Agent Scott Nesbitt [55-1], filed in response to the Motion, the surveillance camera was in place from January 2016 through on or about May 2, 2017. *Id*. ¶ 6. The camera only viewed the exterior of Better Way Pharmacy and the surrounding area, including the exterior of other commercial properties in the same strip mall-style shopping center, and part of the parking lot. *Id*. ¶ 7. This is a publicly-accessible strip mall, not obscured or protected by any fence, wall or other object. *Id*. ¶¶ 8, 13. The agents could remotely zoon, pan and tilt the camera. *Id*. ¶ 8. But the camera had no independent light source, could not record audio, and possessed no enhanced infrared or other capability to record any activity inside Better Way Pharmacy

except that which may have been visible to any observer on the street through the pharmacy's front windows. *Id*. ¶ 9-11. Defendant does not dispute these statements or provide any contrary allegations of fact.

Defendant at the pretrial conference proffered that the pole camera captured a very large volume of data. The Government does not appear to contest this allegation and in fact demonstrates that the camera was in place recording video images of the exterior of the pharmacy for nearly 17 months.

## II. DISCUSSION

The Fourth Amendment provides, in relevant part, that the people have the right to be "secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The ultimate touchstone of the legality of any police investigative conduct under the Fourth Amendment is "reasonableness." *Riley v. California*, 134 S.Ct. 2473, 2482 (2012). Traditionally, a criminal defendant moving to suppress evidence under the judicially-crafted exclusionary rule for Fourth Amendment violations had been required to establish that warrantless conduct by the police intruded on both a subjective and objectively reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 361 (1967). In *United States v. Jones*, 565 U.S. 400, 407-408 (2012), the Supreme Court clarified that the Fourth Amendment also protects

against physical trespass into the categories of premises enumerated by the Amendment, that is, one's person, house, papers and effects.

While the parties cite no Eleventh Circuit cases on the question, the Government cites several other cases that have rejected Fourth Amendment challenges as to pole or surveillance camera footage. *See United States v. Houston*, 813 F.3d 282, 289 (6th Cir. 2016); *United States v. Bucci*, 582 F.3d 108, 116-117 (1st Cir. 2009); *United States v. Mazzara*, 2017 WL 4862793 (S.D.N.Y. Oct. 27, 2017); *United States v. Moore*, Case No. 14-20206, 2014 WL 4639419 (S.D. Fla. Sept. 15, 2014).

Defendant cites no case in any court that has suppressed pole camera footage. Nevertheless, Defendant argues that this Court should broach new legal ground by doing so, by analogizing to two Supreme Court cases dealing with other investigative techniques. First, Defendant cites *Carpenter v. United States*, 138 S.Ct. 2206, 2217 (2018), in which the Supreme Court found that the police require a warrant to obtain, even from a third party, a person's historical cell phone location data over an extended period. Second, Defendant cites *Jones*, which found that the placement of a tracking device on a person's car for purposes of long-term monitoring of its whereabouts amounted to a physical trespass that also requires a warrant. *Jones*, 565 U.S. at 404-406.

The Court in this case easily finds in favor of the Government's position.  In other words, the use of a pole camera installed on public property, or property unaffiliated with Defendant, to view the exterior of a commercial business in a publicly accessible strip mall, requires no warrant.  As the pole camera caselaw cited by the Government shows, Defendant can claim no reasonable expectation of privacy as to simply his ingress into and egress from the unobscured front public entrance of his commercial business.  Plainly, the Defendant would have made himself visible to anyone in the surrounding area which, in the context of a public shopping center, could not reasonably have been believed to be deserted.  Indeed, Defendant does not dispute the Government's argument, that anything depicted by this camera would have been equally visible to any shopper or other bystander, or even to a team of agents staking out the location from another property.  *See Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *California v. Ciraolo*, 476 U.S. 207, 213 (1986) ("the mere fact that an individual has taken measures to restrict some views of his activities [does not] preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible.")

Nor were *Jones*'s concerns with physical trespass implicated by use of this camera.  No allegations suggest that the camera was placed on the Defendant's

property or physically intruded upon any property affiliated with the Defendant. That the camera simply viewed from afar the exterior of Defendant's commercial business is not remotely akin to a physical trespass.[1]

While the motion would be denied in any event, it further undermines Defendant's position that the property at issue is a publicly-accessible, retail establishment. While the Fourth Amendment applies to commercial premises, the Supreme Court has recognized that an "expectation of privacy in commercial premises ... is different from, and indeed less than, a similar expectation in an individual's home." *New York v. Burger*, 482 U.S. 691, 700 (1987); *United States v. Chavez*, 169 F.3d 687, 691 (11th Cir. 1991). Here, the property depicted by the camera was the front entrance of a pharmacy in a shopping center. There could be no reasonable expectation of privacy as to the images of the Defendant (and others) entering and exiting this plainly visible establishment with presumably highly permissive access. *See, e.g., Houston*, 813 F.3d at 287-288 ("There is no Fourth

---

[1] Defendant's counsel conceded at the pretrial conference [51] that he was not aware of any images depicting the inside of the pharmacy, and none of his briefs in support of the motion allege otherwise. It certainly does not appear from the example image proffered by the Government, [55] at 4, that much of anything can be seen inside the business. In any event, the Court's proposed ruling would not be any different had the camera also happened to be able to see through the large front windows. There remains no allegation that the camera was doing anything more than taking photographic recordings of a view that would have been visible to passers-by whether with a camera or otherwise. These facts do not suggest any Fourth Amendment violation.

Amendment violation, because Houston had no reasonable expectation of privacy in video footage recorded by a camera that was located on top of a public utility pole and that captured the same views enjoyed by passersby on public roads.")

The Defendant's references to *Jones* and *Carpenter* are easily distinguished. *Carpenter*, 138 S.Ct. 2206, addressed whether the Government could obtain historical cell site locational information for a cellphone, effectively tracking nearly all of the user's movements with precision, for what amounted to roughly nine months. The Court found that the ability to construct such a detailed and comprehensive log of a person's movements over such a long period, based only on the use of a device so ubiquitous in modern life, offended reasonable expectations of privacy. On this basis, the Court found that a warrant is necessary to obtain such data.

In this case, by very large contrast, the pole camera only captured images of a single fixed location, that is, the Defendant's pharmacy storefront. This camera did not track Defendant's movements other than as he may have entered or exited the store. This technique did not otherwise reveal any of Defendant's activities and hardly allowed investigators to compile the sort of comprehensive log of movements that concerned the Court in *Carpenter*.

*Jones*, 565 U.S. at 407-408 involved the warrantless installation of a tracking device on a suspect's vehicle, which then tracked the vehicle's

movements for four weeks. Again, for the reasons described above, the privacy issues implicated by such long-term tracking of a person's driving movements is itself very different from the case at bar. But the Court in *Jones* was not primarily concerned with a reasonable expectation of privacy in the Defendant's movements. Rather, the substantial basis of the Court's ruling in *Jones* was that the police physically trespassed on Defendant's property—a vehicle—to install a device. This concern is not remotely presented by Defendant's motion. While it is not clear from exactly where the pole camera was operating, there is no suggestion that the police installed it on any property as to which Defendant could claim a privacy interest.[2]

---

[2] Defendant in his reply brief states that the Government has not disclosed the "actual location of the camera." Defendant "object[s]" to this failure to disclose, arguing that "it is axiomatic that [Defendant] has a right to know and challenge this information in both the pretrial, and possibly the trial proceedings under the Due Process and Confrontation Clauses of the Constitution." [59] at 3 n. 4. For purposes of the instant motion, however, what matters is that Defendant does not allege any facts to suggest even a possibility that it was installed on his personal or business property, and counsel conceded at the pretrial conference that he has no reason to believe such to be the case. It is obvious from the example image proffered by the Government, [55] at 4, that the camera was not installed at the actual Better Way Pharmacy itself, as the image clearly depicts the view of the pharmacy from afar. Defendant does not suggest that there is any other property in this area in which he has a protectible privacy interest giving rise to standing to challenge the installation of a camera. Thus, Defendant has not shown that disclosure of the specific location would be material to the resolution of this motion.

Finally, Defendant's references to needing an evidentiary hearing are meritless. The Defendant must rely on more than conclusory speculation to obtain an evidentiary hearing. *See United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (*quoting United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984)). In other words, "where a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion." *Sneed*, 203 F.3d at 888. Rather, "[a] motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. . . . A court need not act upon general or conclusory assertions. . . ." *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (internal citations omitted)).

Defendant has referred to needing a hearing to offer proof as to the sheer volume of data captured by this camera. But Defendant already has that data, as produced to him in discovery. He is therefore already able to use that data, the "volume" of which is likely not disputed, or at least specifically allege facts to explain why a hearing is necessary. Regardless, Defendant has not shown why the volume of data from this camera is material to resolution of the motion. Whether this camera depicted one day or 18 months-worth of images, it remains that the

images at issue simply show the unobstructed front entrance of a publicly-accessible retail store. There is no protectible privacy interest or common-law trespass concern implicated by these facts and Defendant has identified no need for a hearing to establish otherwise.

## CONCLUSION

It is **RECOMMENDED** that Defendant's Motion to Suppress [50] be **DENIED**.

IT IS SO **RECOMMENDED** this 29th day of March, 2019.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE