## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **v.** | : | **CRIMINAL CASE NO.** |
| | | **1:17-CR-430-TWT-JSA** |
| **THOMAS UKOSHOVBERA A. GBENEDIO** | : | |
| | : | |

## ORDER AND REPORT AND RECOMMENDATION

This matter was decertified and returned by Judge Thrash to the undersigned to reconsider (a) Defendant's Motion for Bill of Particulars [35] and (b) Defendant's request for non-party subpoenas pursuant to Fed.R.Crim.P. 17(c). *See* Order [128]. The Court granted the subpoenas in a conference on January 31, 2020 [131] and a series of written orders thereafter [133-137]. The Court also set a briefing schedule for the filing of supplemental submissions on the request for a Bill of Particulars, which submissions have now been received [138][140]. In addition, the Defendant has also filed new motions including a motion to dismiss the indictment and to compel disclosure of grand jury transcripts [141][142].

The Court issues this combined Order and Report and Recommendation to address these pending matters. Specifically, the Court **RECOMMENDS** that the Motion to Dismiss [141] be **DENIED**, and **ORDERS** that the Motion for

Disclosure [142] be **DENIED** and the Motion for Bill of Particulars [35] and

Motion to Continue [148] be **GRANTED**.

## I.     BACKGROUND

### A. *The Indictment*

Defendant was a pharmacist licensed to practice in the State of Georgia.

Indictment [1] ¶ 12.  He owned, operated, and oversaw the day-to-day operations

of Better Way Pharmacy ("Better Way") in Mableton, Georgia.  *Id*. ¶¶ 13-14.

These operations included purchasing and dispensing controlled substances,

pursuant to Better Way's registration with the DEA.  *Id*.

The Indictment includes several paragraphs summarizing various legal

requirements governing the dispensation of controlled substances by pharmacies

and pharmacists.  *Id*. ¶¶ 1-11.  Included among these requirements are that

pharmacists may only dispense controlled substances, acting in the usual course of

their professional practice, and pursuant to prescriptions from licensed medical

practitioners.  *Id*. ¶¶  4, 7-10.  It is unlawful for a pharmacist to dispense controlled

substances pursuant to a prescription that the pharmacist knows or should know is

invalid.  *Id.* ¶ 10.  Patients picking up certain controlled substances must also

present government-issued photo identification.  *Id*. ¶ 11.

The Indictment charges the Defendant with 70 separate counts of Unlawful

Drug Dispensing under 21 U.S.C. § 841(a)(1).  Each charge includes the same

general language, that is, that "On or about the dates set forth below, in the
Northern District of Georgia, [Defendant], as described below, did knowingly and
intentionally dispense mixtures and substances containing controlled substances,
by filling prescriptions for controlled substances, outside the course of professional
practice and for other than a legitimate medical purpose." *See, e.g., id.* ¶ 16.   In
table format, the Indictment then proceeds to list the 70 individual counts by
identifying the date the prescription was filled, the prescription number, and a
description that includes the name and quantity of the specific substance that was
dispensed along with the initials of the patient to whom it was dispensed.   The
Indictment includes a 71st Count, for refusal of inspection, which is not at issue in
the Defendant's instant motions.

### B. *Relevant Procedural History*

Among other pretrial motions filed within the deadline set by the Court,
Plaintiff moved for a Bill of Particulars.  *See* Motion [35].  In this cursory
submission, Defendant asserted that the Indictment "is so lacking in specific
allegations" that it fails to explain "how the statute was violated in a meaningful
way in order to [allow for Defendant] to prepare his defense" or plead double
jeopardy in the event of a later prosecution.  Motion [35] at 3.  This motion did not
identify what specific information was lacking in the Indictment, and why the
Indictment lacked sufficient detail to enable Defendant to prepare a defense.  *Id.*

The Government's response pointed out that Defendant had been furnished substantial discovery, including its expert report, which detailed the evidence upon which the Government was proceeding.  The Government also asserted in its response the following additional explanation as to its theory of prosecution:

> [T]he Government hereby informs Defendant that the primary manner in which the Government alleges he illegally dispensed controlled substances involved dispensing pursuant to prescriptions Defendant knew or should have known were forged and/or fraudulent.

Response [46] at 6.

Defendant  did not file any reply to the Government's response to the request for a bill of particulars, and specifically did not dispute that the substantial discovery in the case, the Government's expert report, and the statement quoted above, combined to provide Defendant with sufficient information as to the basis for the charge.  Therefore, the Court denied the requested Bill of Particulars [70].

In January 2019, several months after the June 14, 2018 deadline for filing pretrial motions, *see* Order [34], Defendant filed a Motion to Dismiss the Indictment, on much the same grounds as formed the basis of the Motion for Bill of Particulars, *see* Motion [60].  The Motion to Dismiss argued that "the indictment fails to put Mr. Gbenedio on notice sufficient for him to know what the basis for the prosecution is, what the prosecution's theory of the case is that was presented to the grand jury and facts that would prevent him from pleading double jeopardy in a subsequent prosecution." *Id*. at 7.  The Court recommended denial of the

4

Motion to Dismiss, in a consolidated Order and Report and Recommendation that also denied the requested Bill of Particulars [70].  Specifically, the Court found that the Motion to Dismiss was untimely filed, and also independently found that the Indictment sufficiently alleged the violations.  *Id*.  The District Judge adopted the Report and Recommendation and overruled the objections to the denial of the requested particulars on May 17, 2019 [88].

In arguments relating to various evidentiary matters before the District Judge in advance of a January 13, 2020 trial date, the Government articulated a broader formulation of its trial theory than what was articulated in its response to the Motion for Bill of Particulars.  As Government counsel explained to Judge Thrash in a conference on January 6, 2020, the Government continues to rely on the theory that the Defendant was knowingly filling forged prescriptions, at least as to Counts 1-69.  *See* Tr. [130] at 7-10.  But counsel explained that the Government would also argue that, even if the prescriptions were not forged, Defendant still would have known that the prescriptions were issued not for a legitimate medical purpose and outside the course of professional practice, based on "a panoply of red flags" identified by a Government expert.  *See id*. at 9-10.  The Government also stated that at least one count – Count 70 – was based on a prescription that was not forged and that the Government's sole theory of liability as to this Count is that Defendant

should have know based on "red flags" that the prescription was improperly issued. *Id*.

On the basis of this discussion, Judge Thrash found that the Government had "muddied the water" as to its evidentiary theories at trial, and had asserted a theory broader than that previously represented in its response to the Defendant's Motion for Bill of Particulars. *Id.* at 11. Because the undersigned had relied on the Government's earlier, narrower formulation of its theory in denying Defendant's requested third party subpoenas and in denying a Bill of Particulars, Judge Thrash continued the trial, and returned the case to the undersigned with instructions to reconsider both of those issues. *Id*. As noted above, after Judge Thrash returned the case to the undersigned, Defendant filed various additional motions, including a new Motion to Dismiss [141] and a Motion for Disclosure of Grand Jury Material [142].

## II.   REPORT AND RECOMMENDATION ON A MOTION TO DISMISS [141]

### A. *The Motion To Dismiss Remains Untimely and Improperly Filed*

As explained in detail in the Court's original Report and Recommendation [70], Defendant's original Motion to Dismiss the Indictment [60] was filed approximately six months after the deadline for the filing of substantive pre-trial motions and was untimely. The Court recommended, and the District Judge approved, denial of the Motion to Dismiss on this basis, among other bases.

In its January 7, 2020 order, the District Court decertified and returned the case to the undersigned for two specific purposes, that is, to reconsider (a) Defendant's motion for bill of particulars, and (b) Defendant's request for third-party subpoenas to Atlanta-area pharmacies.  The Court did not otherwise authorize the filing of new, substantive pre-trial motions (which motions were due back in June 2018) or reopen the denial of the motion to dismiss.  Without requesting leave to file additional new motions, Defendant instead went ahead and filed a Second Motion to Dismiss [141] and Motion to Disclose [142].

Defendant argues that he should be able to renew his motion to dismiss, or file a new one, because the Government has muddied the waters regarding its formulation of the general manner of Defendant's violations.  Defendant argues that it was not foreseeable that the Government would alter its theory of liability and that these new developments justify a new motion to dismiss.  Defendant points out that the undersigned's recommendation to deny the original motion to dismiss referenced the additional statements that the Government offered as to its evidentiary theories.  The undersigned's Report and Recommendation concluded that the Indictment sufficiently alleged the essential facts upon which the charges are based, and additionally that "the Government provides substantial information in the Indictment, the response to the Bill of Particulars motion, and in discovery, to explain at least the general manner of Defendant's violations."  Report and

Recommendation [70] at 13.  Because this statement of the Government's theory has since been "muddied," Defendant argues it should be able to ask for dismissal anew.

These arguments fail for several reasons.  Defendant himself argues that in adjudicating a motion to dismiss an indictment, "this Court is limited to reviewing the face of the indictment."  *See* Def. Motion [141] at 12 (*citing United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004)).  The deadline to file any substantive motions addressed to the facial insufficiency of the indictment was June 14, 2018.  Defendant did not file any such motion until approximately six months later.  Nothing about the matters that led to the decertification of this case altered the information that is present on the face of the indictment.

More fundamentally, Defendant knew as of June 14, 2018 that the Indictment used general statutory language, stating he filled 70 specific prescriptions "outside the course of professional practice and for other than a legitimate medical purpose."   He knew that the Indictment failed to more specifically explain how, and based on what evidence, these 70 prescriptions were "outside the course of professional practice" and/or "for other than a legitimate medical purpose."  Thus, whether the Government intended to proceed on a "forgery" theory, on a "red flags" theory, some other theory, or a combination thereof, the Defendant was aware that no such evidentiary theories were

specifically articulated in the Indictment.  Yet the Defendant chose not to move to

dismiss on this basis back in June 2018.   That the Government has since "muddied

the waters" with subsequent explanations of its theory does not materially change

the information available to Defendant when he chose not to file a timely motion.

Finally, even if it were material to a motion to dismiss that "the government

would disclose an expert report that entirely changed its theory of prosecution in

the case," as Defendant argues, *see* Reply Br. [152] at 2, Defendant has known of

that expert report for many months, at least since June, 2019.[1]   Yet Defendant did

not file the instant Second Motion to Dismiss for an additional seven months, until

February 12, 2020.  There is no explanation for this delay.  For all these reasons,

the Court finds the motion to dismiss to be untimely.  Nevertheless, the Court will

continue to discuss the merits, as discussed below.

B. *The Motion Fails On the Merits*

The Sixth Amendment provides that "in all criminal prosecutions, the

accused shall enjoy the right ... to be informed of the nature and cause of the

accusation." This constitutional protection is implemented by the requirement of

Rule 7(c)(1), Fed.R.Evid., which requires that the indictment or information "be a

---

[1] The Government's deadline to produce expert reports was in August 2018, and the Defendant previously stated that he received the Government's report on August 20, 2018, *see* [40] at 1.  Nevertheless, the only copy of the Sullivan report that the Court can locate in the record is specifically dated June 12, 2019. *See* [107-1].

plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is considered legally sufficient under Rule 7(c)(1) if it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009). The sufficiency of an indictment is determined on its face. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006).

Nevertheless, although an indictment must allege the essential facts constituting the offense, it generally need not disclose the specific proof or conduct that will be used to prove those factual allegations. *See United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990) ("[T]he government is under no duty to provide defendant with all overt acts that might be proven at trial."). A defendant's remedy if additional information is needed to help prepare for trial is to request a bill of particulars, which will be discussed further below.

The undersigned discussed at length in its original Report and Recommendation [70] as to why the Indictment is sufficient under Rule 7(c). The same reasons apply now. To sum up, the Indictment explains in detail the specific prescriptions—by date, medication, prescription number, and patient—that forms the basis of each charge. As to each of these prescriptions, the Indictment alleges

that the Defendant "knowingly and intentionally dispense[d] mixtures and substances containing controlled substances, by filling prescriptions for controlled substances, outside the course of professional practice and for other than a legitimate medical purpose."  Indictment [1] ¶ 16.  The Indictment thus remains sufficient to inform the Defendant as to the charges he is facing.  The Indictment also includes the statutory language, which necessarily charges the elements of the offense.  The *essential* facts of the violations are included in the charge, that is, the details noted above that make clear the specific prescriptions that Defendant allegedly illegally filled.  All of this information clearly protects the Defendant against double jeopardy.  Once jeopardy attaches in this case, the Indictment will easily enable Defendant to defend against any future federal drug trafficking charges based on these same transactions.  Thus, the bare minimum standards set forth by Rule 7 and the Sixth Amendment are satisfied.

Much of the litigation back-and-forth has related to the Government's evolving theory, or evidence and arguments, by which it anticipates proving how Defendant filled these prescriptions "outside the course of professional practice and for other than a legitimate medical purpose."  As noted above, however, the Indictment need not include such evidentiary details.  This is not to say that the Defendant may not be entitled to some further disclosure by way of a Bill of Particulars.  But the lack of a detailed explanation as to the specific evidentiary

11

theory or basis for which the Government will meet the elements of the offense, is not a ground for dismissal of the Indictment. Thus, whether the government intends to prove that Defendant knew the prescriptions were forged and fraudulent, and/or would have known that those prescriptions were at least improperly issued even if they had been signed by a doctor, is a trial theory not specifically required to be spelled out in the Indictment.

Defendant continues to cite *Russell v. United States*, 369 U.S. 749 (1962), but the Court previously addressed *Russell* in its original Report and Recommendation. To briefly reiterate, in *Russell*, a witness refused to answer some questions during a hearing before a Senate subcommittee, and later was charged with obstructing a matter "then under investigation by the congressional body that summoned him." *Russell*, 369 U.S. at 755. Yet the Indictment did not identify the matter actually under investigation by way of the answers the Defendant refused to answer. The Supreme Court found that the "matter under investigation" was an essential fact of the crime being charged, and thus found the indictment to be deficient for not identifying this fact. Here, by contrast, what Defendant seeks is not an "essential fact," but rather disclosure of the prosecution's evidentiary theory supporting its charge. These are not details that are required to be included by Rule 7 or the Sixth Amendment.

Defendant also argues that whether a physician signed the prescription impacts the elements of the offense.  Essentially, Defendant argues that dispensing controlled substances pursuant to a forged prescription never signed by a doctor is a different crime—with a different *mens rea*—than dispensing controlled substances pursuant to an actual prescription that the pharmacist knows for other reasons to be invalid.  While Defendant does not specifically use this term, it appears that he is arguing that the Indictment is guilty of duplicity, in that it would lump different crimes with different standards and legal elements into the same charges.

Defendant notably cites no cases finding an indictment to be invalid on this basis, that is, for alleging that a pharmacist knowingly filled prescriptions "outside the usual course of professional practice or are for no medical purpose," without clarifying whether the prescriptions had been forged (and never signed by a doctor) or improperly issued by a doctor.  None of Defendants' cases address this situation at all, in any context.  The Court disagrees with Defendant's reading of the statute, and simply sees no basis to declare the Indictment to be fatally deficient for failing to provide its theory of prosecution.

Generally, there is a single statute that forbids trafficking in controlled substances:  "except as authorized by [the Act], it shall be unlawful for any person knowingly or intentionally ... to ... distribute[ ] or dispense ... a controlled

substance." 21 U.S.C. § 841(a)(1).  An exception exists for doctors issuing valid prescriptions or pharmacists filing valid prescriptions, but "[t]he responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription." 21 C.F.R. § 1306.04(a).  Thus, if a prescription is issued without a legitimate medical purpose or outside the usual course of professional practice, "the person knowingly filling such a purported prescription, as well as the person issuing it," is subject to the criminal penalties of section 841. *Id.*

These standards are not fundamentally different based on the specific reasons why a pharmacist might recognize a prescription to be invalid.  Nothing in this statutory language would draw a distinction between a prescription known to be invalid because it is a forgery, versus a prescription known to be invalid because it was issued by a doctor for illegitimate purposes.  In either case, the pharmacist is liable because he or she filled a prescription knowing that it was issued without a legitimate medical purpose or outside the usual course of professional practice. The specific evidentiary theory as to why the pharmacist knew a particular prescription to be invalid is a subject for discovery, trial evidence, and perhaps a Bill of Particulars, but is not a constitutionally required component of the Indictment.

*United States v. Limberpoulos*, 26 F.3d 245 (1st Cir. 1994), a case relied on by Defendant, says nothing more than this.  This case specifically outlines the above legal framework, that is: that the distribution or dispensing of controlled substances is governed by one statute—21 U.S.C. § 841(a)(1)—with one exception applicable to medical professionals—exempting a pharmacist's (or physician's) drug-dispensing activities so long as they do not fall outside the usual course of professional practice or are for no medical purpose.  *Id*. at 249.  Defendant relies on *Limberpoulos* for the proposition that "if the drug-dispensing pharmacist knows that a customer not only lacks a valid prescription but also will not use the drugs for legitimate medical purposes, then section 841 applies in full flower and treats the dispenser like a pusher."  *Id*.  This quote is not material to the issue before the Court.  First, this quote was made in the context of a sentencing decision and not an analysis of the contents of an Indictment or the elements of the offense.  Second, it simply re-states the general proposition, that a pharmacist who knowingly fills an invalid prescription for illegitimate purposes commits a crime under Section 841.  Nothing about this discussion suggests that the Indictment must explain the evidentiary basis for why the pharmacist knew the prescription to be invalid, or that different elements apply depending on the reasons for this knowledge.

Defendant also cites *dicta* from *United States v. Joseph*, 709 F.2d 1082, 1094 (11th Cir. 2013), that "to convict a licensed pharmacist under section 841(a)(1), the government must prove that the pharmacist filled a prescription *knowing that a physician issued the prescription* without a legitimate medical purpose or outside the usual course of professional practice."  (emphasis added). To the extent Defendant suggests that this quote means, literally, that a pharmacist is absolved from liability under Section 841(a)(1) for knowingly dispensing drugs pursuant to forged prescriptions, that proposition is obviously untrue and would make absolutely no sense under the statutory language and purposes.  Indeed, this was not remotely the issue presented and considered in *Joseph*.

Rather, the quote from *Joseph* was in the context of an alleged conspiracy between a pharmacist and a doctor by which the former filled illegitimate prescriptions written by the latter.   Thus, in *Joseph*, it was undisputed that a physician wrote prescriptions, and the only issue presented in that case was whether the pharmacist knew those prescriptions to be invalid when he filled them. Further, the issue on appeal in *Joseph* related not to the wording of the indictment, or even any relevant language in a jury charge, but rather an entirely inapposite

issue: the validity of jury charge language defining the standard of care that the jury was to apply to the defendants' conduct.[2]

In short, there is nothing materially new not previously considered by the Court vis-à-vis the request to dismiss the Indictment. The Indictment remains legally sufficient for all of the reasons explained above, and in the Court's prior Report and Recommendation [70]. The new Motion [141] should be denied as both untimely and meritless.

## III.   ORDER ON A MOTION FOR DISCLOSURE OF GRAND JURY MATERIALS

Federal Rule of Criminal Procedure 6(e)(3)(E) authorizes the Court to order the production of grand jury minutes under limited circumstances:

> (E) The Court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand jury matter:

---

[2] Defendant also suggests that the Indictment is invalid because, while the jurors might unanimously find that he knowingly filled an illegitimate prescription, they might not necessarily agree on the particular evidentiary theory advanced by the Government as to the Defendant's illegal knowledge. In other words, some jurors might find that Defendant knew the prescription to be outright fabricated; some jurors might harbor reasonable doubts about whether Defendant knew the prescription to be forged, but might nevertheless find that, at a minimum, he knew the prescription was outside of professional practice and for medical reason for other reasons, even if written by a doctor. As a general matter, however, the jury need not always agree on the particular evidentiary theory or basis for a finding the elements of an offense to be satisfied. *See generally U.S. v. Verbitskaya*, 406 F.3d 1324, 1334 (11th Cir. 2005). Whether the jury must be unanimous on this issue is not before the undersigned and could be addressed if warranted in jury instructions. It remains that the evidentiary theory supporting the charge need not be detailed in the Indictment itself.

> (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.

Also, "while district courts have inherent authority to act outside Rule 6(e)(3), any inherent disclosure authority is exceedingly narrow and exists only in exceptional circumstances." *United States v. Aisenberg*, 358 F.3d 1327, 1347 (11th Cir. 2004). This rule "does not permit a fishing expedition at the expense of grand jury secrecy." *United States v. Price*, 582 Fed. Appx. 846, 850 (11th Cir. 2014).

Here, disclosure is not warranted as Defendant has not shown with any particularity that the Indictment should be dismissed because of any matter that occurred before the grand jury.  Defendant provides no other compelling need or justification to warrant breaching grand jury secrecy.

Defendant argues that disclosure is required to "ensure that the government is proceeding only on the theory that was presented to the grand jury."  Def. Motion [142] at 3.  But "[a] defendant is deprived of his right to be tried only on the charges returned by a grand jury if the prosecution's proof or theory constitute a modification at trial of an essential element of the offense charged." *United States v. Weiss*, 752 F.2d 777, 787 (2d Cir. 1985).  Defendant cites no authority for the proposition that the Government is limited at trial to presenting the same evidence and arguments in support of the charges as was presented to the grand jury.  In this case, the grand jury found probable cause that Defendant knowingly filled various

prescriptions "outside the course of professional practice and for other than a legitimate medical purpose."  Indictment [1] ¶ 16.  Defendant's speculation that the Government may rely at trial on new alternative evidentiary theories than were presented to the grand jury, but which are entirely consistent with the grand jury's findings, is not a basis for dismissal or disclosure of the minutes.  Thus, the Motion to Disclose [142] is **DENIED**.[3]

## IV.    RECONSIDERATION OF DENIAL OF MOTION FOR BILL OF PARTICULARS [35]

The Court incorporates the legal standards and discussion regarding Defendant's request for a Bill of Particulars outlined in its prior Order [70].  Among other things, the Court denied that request as moot, based in part on the Government's disclosure in its response:

> [T]he Government hereby informs Defendant that the primary manner in which the Government alleges he illegally dispensed controlled substances involved dispensing pursuant to prescriptions Defendant knew or should have known were forged and/or fraudulent.

Response [46] at 6.  The Court found that this statement, in combination with the information provided in discovery and within the four corners of the Indictment, was sufficient to allow the Defendant to prepare for trial.

---

[3] The Motion for Disclosure of Grand Jury Materials [142] is also untimely for the same reasons as the Motion to Dismiss [141].

The Court has inherent authority to reconsider this decision, however, in the interests of justice. *See U.S. v. Vicaria*, 963 F.2d 1412, 1413–14 (11th Cir. 1992) (*citing U.S. v. Dieter*, 429 U.S. 6, 8–9, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976)). In particular, as noted at length above, the Government has now "muddied the waters" as to the theory supporting the allegation that Defendant knowingly filled illegitimate prescriptions.  The Government now appears to argue, apparently in the alternative as to counts 1-69, that even if the Defendant might not have known that the documents were forged, he nevertheless would have known based on various "red flags" that any doctor issuing them did so outside of standards of practice and for no medical purpose.  This "red flags" theory is apparently the sole evidentiary basis for Count 70, which the Government concedes did not involve a forged prescription.

As noted above, the evidentiary theories supporting the essential elements of the charges need not be included in the Indictment itself.  Nevertheless, in a complex case such as this, the general allegation that the Defendant filled prescriptions "outside the course of professional practice and for other than a legitimate medical purpose" leaves it difficult for the Defendant to prepare for trial. Thus, the Court finds that additional information is warranted to assist the Defendant in his trial preparations.  The Government's theory or theories supporting this charge may be able to be cobbled together from various filings and

disclosures, including the expert report, the Government's trial brief, and other documents.  But the Defendant—and the Court—should be able to rely on a single document that clearly explains the Government's theory in this regard.  This is particularly so given the Government's less than reliable and clear track record in explaining its theory.

Thus, the Court finds that reconsideration of its prior Order [70] is justified, and thereby grants the request for a Bill of Particulars.  The Government is **ORDERED** to file a Bill of Particulars, within Fourteen (14) days, which provides clear and succinct notice of the basis or bases of the claim that Defendant knowingly filled prescriptions "outside the course of professional practice and for other than a legitimate medical purpose," as to each of the drug dispensing counts.

## V.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Defendant's Motion to Dismiss [141] be **DENIED**.  The Court also **DENIES** Defendant's Motion to Disclose Grand Jury Material [142] and, after reconsideration, **GRANTS** Defendant's Motion for Bill of Particulars [35] and **ORDERS** the Government to file a Bill of Particulars as further explained above within **FOURTEEN (14) DAYS**.  The Court also **GRANTS**, *nunc pro tunc*, the Government's Motion to Continue Briefing Schedule [148] and **DEFERS** Defendant's Supplemental Motion in Limine [143] to the District Judge.

This matter is **READY FOR TRIAL**.

 **IT IS SO ORDERED AND RECOMMENDED** this 30th day of March,

2020.

_____
**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**